# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-00106-01-CR-W DW |
| v. | ) | |
| | ) | |
| TIMOTHY RUNNELS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TIMOTHY RUNNELS'
## SENTENCING MEMORANDUM AND
## MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE

COMES NOW Defendant Timothy Runnels, by and through his attorney, and hereby files this Sentencing Memorandum and Motion for Downward Departure and/or Variance for this court's consideration. Mr. Runnels' sentencing is scheduled for May 26, 2016 at 9:00 am. This Memorandum is filed to aid the Court in imposing a sentence which is sufficient but not greater than necessary to serve the objectives of sentencing as set out in 18 U.S.C. § 3553(a).

## I.    INTRODUCTION

On September 11, 2015, Mr. Runnels pled guilty to one count of deprivation of rights under color of law in violation of 18 U.S.C. § 242. The charge and resulting plea arose from Mr. Runnels' actions during a lawful car stop and arrest of B.M. Through his plea, Mr. Runnels has accepted full and complete responsibility for his actions and knows that he will live the rest of his life with the consequences.

Mr. Runnels has been on pretrial release since he surrendered to authorities on March 27, 2015. Mr. Runnels has not violated any condition of pretrial release. Since his release on pretrial supervision, Mr. Runnels has voluntarily relinquished his peace office license. This is significant in that his lifelong goal was to be a law enforcement officer. He has since obtained gainful employment, and has been a productive member of the community in which he resides.

Without offering justification or excuse, Mr. Runnels respectfully submits that his illegal conduct was due, at least in part, to frustration that he experienced during the legitimate stop of B.M.'s vehicle and B.M.'s subsequent repeated refusals to obey his lawful commands. Mr. Runnels allowed his frustration to grow. Regretfully, he caused injury to B.M. during the course of his arrest by deliberately dropping him. Mr. Runnels is remorseful for his actions and is fully aware of the harm he has caused to B.M. His actions have also caused pain to his family, loved ones and friends who have, nonetheless, remained supportive. He has willingly stepped away from the only career that he had ever envisioned for himself – a police officer.

The Court has received the Presentence Report (PSR) and the advisory United States Sentencing Guidelines (USSG) calculations. In the instant case the PSR calculated the total offense level as 30, the criminal history category as I with a guideline range of 97-121 months. Mr. Runnels has noted his objections to the advisory guidelines calculation.

As the Court knows, pursuant to Mr. Runnels' plea agreement, the government has agreed to request a sentence of no more than 48 months, while Mr. Runnels is free to

advocate his position supporting a non-custodial sentence.  Here, a downward departure pursuant to U.S.S.G. § 5K2.0 – vulnerability to abuse while incarcerated and conditions of confinement-may be warranted in this matter.  Further, there are numerous reasons under § 3553(a) which warrant a variance below the advisory guideline range in this case.  These reasons include (1) the afore-mentioned departure factors which can also be considered as a variance factors; (2) proportionality; and (3) the fact that Mr. Runnels is highly unlikely to reoffend.

Based on these substantial mitigating sentencing factors,  Mr. Runnels respectfully moves for a downward departure and/or variance to a sentence of five years of probation, or perhaps a sentence of time served, with five years of supervised release with a special condition that six months be served on electronic monitoring, a condition to perform community service, and suggests this would be a fair and reasonable sentence in light of the sentencing objectives set forth in Title 18 U.S.C. § 3553(a)(2).

## II.     UNRESOLVED OBJECTIONS TO THE PSR

Mr. Runnels previously submitted his corrections, clarifications, and objections to the PSR.  Specifically, Mr.  Runnels objects to the base offense level and corresponding enhancements under paragraph 24 of the PSR.  The cross-reference to § 565.060 R.S.Mo is erroneous.  The defendant contends that none of the subsections of § 565.060 R.S.Mo apply to the conduct by Mr. Runnels.  Mr. Runnels did not "attempt to kill or knowingly cause or attempt to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause."  § 565.060.1(2) R.S.Mo.  Nor did Mr.

3

Runnels "attempt to cause or knowingly cause physical injury to another person by means of a deadly weapon or dangerous instrument." § 565.060.1(2) R.S.Mo. As explained below, the decision to use the Taser and how it was used did not rise to a criminal act. Mr. Runnels' factual basis is centered around the "drop" of B.M. which occurred during the arrest. The "drop" of B. M. does not qualify within § 565.060.1(2).

Rather, Mr. Runnels pled guilty to 18 U.S.C. § 242 based upon a factual basis pertaining to the intentional drop of B.M. He accepts responsibility for this conduct, but at the time did not truly contemplate the risk or consciously disregard the risk of injury. "Rather, the defendant deliberately dropped B.M. face first on the ground while B.M. was restrained and not posing a threat to the defendant or others. The offense resulted in bodily injury to B.M." To be clear, Mr. Runnels is not contesting that the injuries to B.M. meet the definition of serious bodily injury as set out in § 1B1.1. Rather, Mr. Runnels contends that even the cross-reference to § 565.060.1(3) should not apply as charged in the indictment. At a minimum and explained further below, the use of the Taser should not invoke the cross-reference.

Under the defendant's argument, the adjusted offense guideline should either be a level 17, or in the alternative, a level 26, but not as the PSR recommends which is a level 30. The defense alternatives are set out below as Defense Alternative A or Defense Alternative B.

4

**Defense Guideline Alternative A**:

§2H1.1.  Offense Involving Individual Rights (18 U.S.C. § 242)

(a) Base Offense Level                                                                    +10

(b) Specific Offense Characteristic

    (1) If (A) the defendant was a public official at the time of the offense; or (B)

       the offense was committed under color of law, increase by 6 levels.   +6

  Victim Related Adjustment § 3A1.1(b)                                            +2

  Obstruction Related Adjustment § 3C1.1                                        +2

  Acceptance of Responsibility § 3F1.1(b)                                         -3

  **Total Adjusted Offense Level**                                              **17**


**Defense Guideline Alternative B**:

Count 2: Deprivation of Rights Under Color of Law (Modified language from PSR highlighting the defendant's point)

    **Base Offense Level**:  The applicable guideline for 18 U.S.C. § 242 offenses is found at U.S.S.G. §2H1.1 of the guidelines.  Subsection (a) under this guideline instructs the Court to apply as the base offense level the greater of the offense levels which result from subdivisions (1), (2), (3), or (4).  Under subdivision (1), the offense level is determined from the "offense guideline applicable to any underlying offense."  Application note 1 defines this as "any conduct established by the offense of conviction that constitutes an offense under federal, state or local law."  Based on the conduct underlying the offense of conviction in Count 2, the defendant committed a felonious assault (Assault-2nd Degree – RSMo. 565.060.1).  Since this felonious assault involved "serious bodily injury" (defined at U.S.S.G. §21B1, application note 1(L)), the guideline applicable to aggravated assault at U.S.S.G. §2A2.2 applies.  *Using this guideline, the base offense level for this case would not be 23 due to Mr.*

5

*Runnels' use of the Taser and should not invoke both a 4-level enhancement and a 5-level enhancement under §2A2.2(b)(3)(B).* Because the offense level under subdivision (1) is greater than the offense levels applicable to the other subdivisions, the base offense level for this case is 23, pursuant to U.S.S.G. §2H1.1(a)(1).

<u>19</u>

**Specific Offense Characteristics**: Since the defendant was a public official (a police officer) at the time of the offense, the offense level is increased by 6, pursuant to U.S.S.G. §3A1.1(b).

<u>+6</u>

**Victim Related Adjustment**: Because the defendant should have known that the victim of the offense was a vulnerable victim, the offense level is increased by 2, pursuant to U.S.S.G. §3A1.1(b).

<u>+2</u>

**Adjustment for Obstruction of Justice §3C1.1**:          <u>+2</u>

**Acceptance of Responsibility §3E1.1(B)**:          <u>-3</u>

**Total Adjusted Offense Level**          **26**

To be clear, Mr. Runnels accepts full responsibility for this wrongful conduct. Mr. Runnels withdraws his remaining initial guideline objections to the PSR.

As currently calculated, the PSR reflects a total offense level of 30 in Criminal History I with an advisory guideline range of 97 to 121months. Should the Court sustain the defendant's objection as set out above, the resulting total offense level would be either a level 17 in Criminal History I with an advisory sentencing range of 24 to 30 months, or a level 26 in Criminal History I with an advisory sentencing range of 63 to 78 months.

## III.   STANDARDS FOR IMPOSING SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. §3553(a)(1)-(7)

6

without giving mandatory weight to the Guidelines. Post *Booker*, after determining the Guideline ranges and any permissible departures within the Guidelines structure, the court must determine whether a non-Guidelines sentence is appropriate. *United States v. Myers,* 503 F.3d 676, 684 (8th Cir. 2007).

Once the Court has calculated the correct guideline range, the Court then has a "responsibility to select a sentence that [is] sufficient, but not greater than necessary to comply with the statutory sentencing purposes." *United States v. Gray,* 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)); see also *United States v. Butler,* 594 F.3d 955, 967 (8th Cir. 2010) (same).

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the Guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines,

7

formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In analyzing a motion for downward variance, a "district court has wide discretion to weigh the factors in each case and assign some factors greater weight than others[.]" *United States v. Kane,* 552 F.3d. 748, 755 (8th Cir. 2009). "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented." *Id. (quoting Gall v. United States,* 128 S.Ct. 586, 597 (2007); *see, e.g., Nelson v. United States,* 129 S.Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). "[I]t will be the unusual case when we reverse a district court sentence – whether within, above, or below the applicable Guidelines range – as substantively unreasonable." *quoting United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008))."

As articulated in 18 U.S.C. § 3553(a), this Court is required to consider the following factors in imposing a reasonable sentence:

> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)     the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)     the kinds of sentences available;

8

(4)     the sentencing Guidelines applicable to the offense; and

(5)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)     the need to provide restitution to any victim of the offense.

Mr. Runnels asserts that application of these factors to the facts of his case demonstrates that a sentence of five years of probation, or perhaps a sentence of time served, with five years of supervised release with a special condition that the first six months be served on electronic monitoring, and a condition to perform community service, is appropriate.

## IV.     U.S.S.G. § 5K2.0 DOWNWARD DEPARTURE

### Conditions of Confinement/Vulnerability to Abuse

U.S.S.G. § 5K2.0 allows a court to grant a downward departure for circumstances present to a degree not adequately taken into consideration in determining the ultimate guideline range.  Mr. Runnels respectfully asserts that there are two bases for consideration under 5K2.0 – the conditions of his confinement and his vulnerability to abuse while incarcerated.  Both of these factors are based on his past service as a law enforcement officer.  A defendant's unusual susceptibility to abuse by other inmates while in prison may warrant a downward departure. *Koon*, 518 U.S. at 111-12 (no abuse of discretion to grant downward departure to police officers convicted of civil rights violations due to their vulnerability in prison); *United States v. Lara*, 905 F.2d 599, 602 (2d Cir. 1990.)  Mr. Runnels was a police officer for the police departments of Kansas City, Missouri, Raymore, Missouri and Independence, Missouri.  During his law enforcement career of nearly 9

9

years, he has come into contact with many offenders. It is not a stretch to assume that in this age of social media, his law enforcement background has the potential to become common knowledge among the prison population. As a result, his incarceration could be unusually harsh and restrictive. He will be internally tagged as law enforcement. And while Mr. Runnels will likely be placed in the general population, if a specific threat to his security is made, he could be transferred, placed in either segregation or a special housing unit, until such time as he could be returned to general population. It would be short-sighted to assume that Mr. Runnels' former livelihood or the crime he committed will soon be forgotten, or that the attendant threat to his security will soon diminish. He could serve a substantial portion of his sentence in some form of segregation.

## V.     18 U.S.C. § 3553(a) SENTENCING FACTORS

### A.     Nature and Circumstances of the Offense and the History and Characteristics of Timothy Runnels

#### 1. Circumstances of the Offense

As the PSR recounts, this criminal investigation began following a car stop and subsequent Taser deployment by Mr. Runnels on B.M. on September 14, 2014. Mr. Runnels, in his capacity as a Police Officer for the Independence, Missouri Police Department, observed a vehicle driven by B.M. in a suspicious manner. When the vehicle plate was called in, Mr. Runnels was informed that the plate had an active warrant associated with a female. After stopping the vehicle, Mr. Runnels approached the passenger side of the vehicle and repeatedly asked B.M. to roll down the window, which he refused to do. Mr. Runnels then approached the driver's side and opened the door. B.M.

10

was instructed on multiple occasions to exit the vehicle, and he declined to do so. B.M. braced himself in the vehicle, at which time a brief struggle ensued. After B.M. was warned, Mr. Runnels then deployed his department-issued Taser according to his training and immediately notified dispatch of the deployment. B.M. exited the vehicle, laid on the ground, and Mr. Runnels handcuffed B.M. and placed him under arrest. While Mr. Runnels showed good judgment by moving B.M. out of the roadway, he regrettably dropped B.M. to the pavement, injuring B.M. Unfortunately, Mr. Runnels was unaware that B.M. had suffered an adverse reaction to the Taser and was in need of immediate medical attention. Ultimately, B.M. was transported via ambulance to the hospital where he was placed in a medically induced coma for several days. The circumstances of the offense are certainly serious, but it is one factor to be considered along with all other factors set out in the sentencing statute.

### 2. Characteristics of Tim Runnels

At nearly 33 years old, Tim Runnels stands before this court with no history of arrests, convictions or juvenile adjudications. Throughout his life, he has been a productive member of his community.

Mr. Runnels was born in Mississippi, and was primarily raised with his sibling in Independence, Missouri by his parents, Judy and Tracy Runnels. He graduated from Truman High School in 2002, obtained a degree in criminal justice in 2006, and married his wife, Michelle, in 2008. They are the proud parents of two young children, ages 4 and 2.

Numerous letter writers speak to Mr. Runnels' positive influence on the lives of his wife, his children and parents and many others in the community. Every letter includes some reference to the importance of Tim Runnels in the lives of his children, and the potentially destructive impact any period of incarceration may have on these young children. From all accounts, the Runnels' are a very loving, tight-knit family.

Mr. Runnels' conduct is completely at odds with his personality and actions as observed by his family and acquaintances, many of whom have written letters of support for this court's consideration at sentencing. Without exception, all of the letter writers hold Mr. Runnels in very high regard, telling a life story of a man who selflessly served his community as a police officer, gave his time and support to many positive activities within his community – as a father, a church member, a friend, and a community volunteer. Mr. Runnels' life has positively impacted a tremendous number of people in his community.

Mr. Runnels and his wife have been married 7 years. Following his resignation of his peace officer license, Mr. Runnels began to work in the plastics industry with his parents. He is the primary financial provider for the family. Mrs. Runnels' poignant letter describes Tim's selfless and giving nature over the course of their marriage. She provides the court with some tremendous insight, and states, "The people who have met Tim and have a personal relationship with him know that he is reliable, caring and will always come running towards a call for help." She goes on to talk about the events of September 14, 2014, stating, "Tim's first words to me…were related to the concern of B.M.'s well-being and his family. He was extremely remorseful and shaken. We instantly prayed together

for B.M.'s recovery. Tim could not eat or sleep for the days after until B.M.'s medical condition became known and stabilized." She also shares that her husband "is truly a good man…and words could never describe how important he is to me and our children…"

There are repeated accounts of Mr. Runnels' work ethic, compassion and love. One friend shared about Mr. Runnels, "He is not a saint, but a sinner. Not an extraordinary man, but an honest man, with good intentions in his heart. A man which is, and has been, a benefit to the community that he lives in, and the family which he loves." His sister informed the court that her brother "has been nothing but caring, compassionate and selfless." She went on to note, "He is dedicated to his wife and children and to creating a family that will have positive impacts on our world. With his children, I have seen him show patience and understanding as well as unconditional love."

Many letter writers discussed the defendant's battle with childhood leukemia and the strenuous treatments he endured. Many reflected on his persistence and determination to get well and live his life to the fullest. A former principal wrote, "Even when Tim was going through some difficult medical issues, he always came to school with a smile."

A former AP teacher wrote of the defendant, "I hold Tim up as a role model for my own children…as someone who has a tremendous work ethic, integrity and the utmost respect of everyone who knows him."

An elderly neighbor wrote of Mr. Runnels, "There are things around our house that are getting harder and harder for us to do for ourselves. So, Tim comes over and mows our lawn for us… There was also a time very recently that a large storm hit our neighborhood

and my husband and I had a large tree come down in our yard…Later that day, Tim had taken care of cutting up the tree for us and removing the part that was still left standing." She further wrote, "…he showed my family nothing but kindness, respect and a very loving character."

Several letters were written by police officers. A now-retired Chief of Police said of Mr. Runnels, "I clearly remember being very impressed with his professional demeanor and genuine desire from day one to be an outstanding police officer and for all the right reasons." He also stated, "He treated citizens with respect and courtesy and made a very positive impact with the young people of our community as well as his fellow officers…" A former Field Training Officer of Mr. Runnels wrote, "Officer Runnels successfully completed the Field Training Program and could have been released from FTO prior to the standard 12 week training program set forth by policy. Officer Runnels performed better during FTO than any other officer I have trained in my career." He went on to note that he had come to know Mr. Runnels personally and "it was readily apparent that he is a man of honor, integrity and was committed to the oath he took as an officer, father and husband." A veteran law enforcement officer and detective described an incident in which he and Mr. Runnels were on a vehicle check when they found a sleeping individual, "Contact was made with the individual and he woke up. Tim struck up a conversation with the individual and learned that he was a military combat veteran who was recently discharged from the Marine Corps." The letter writer detailed the trouble the veteran was having, and related, "I watched Tim provide him with some resources for finding

14

employment, and he tried to get him a hotel provided for a few nights so he could clean up and get some rest." The letter writer concluded, "I was impressed with the character Tim displayed and was another example of the compassion I watched Tim display on numerous occasions."

After leaving his employment as a police officer, Mr. Runnels became employed at a plastics business owned by his parents. While Mr. Runnels had never dreamed of any other career than that of a police officer, he accepted his parents' offer of employment and has learned the business and provides for his family. His parents wrote a letter to the Court and state, "At the young age of 10, Tim was diagnosed with Acute Lymphocytic Leukemia. He fought the cancer for several years with courage, strength, humor, discipline and a respect for life." They went on to describe his desire to become a police officer, "During Tim's Jr. High and early High School years, he felt strongly about becoming a police officer and pursued learning and volunteering where he could. …He continued with his strong sense of serving his community and protecting those around him." Mr. and Mrs. Runnels were proud to tell the Court, "Tim is always helping family, neighbors and strangers even though he rarely talks about it." … "Tim has always been a thoughtful and caring individual."

All of the letters provides the court with a consistent theme –Timothy Runnels is a loving, caring, compassionate person, willing to assume many responsibilities for the betterment of others – all without fanfare or the expectation of public accolades. He is a positive force who is integral to his family and the community at large.

15

Mr. Runnels recognizes the damaging and lifelong effects that his conduct has had on B.M. and his loved ones and society at large. He also recognizes the effect of his conduct on his own family. He enjoys the support and encouragement of a large group of friends and family members who both hold him accountable and support his efforts to continue to be an active and productive member of his community. There is little danger that Mr. Runnels will ever reoffend.

## B. 18 U.S.C. § 3553(a)(2) – The Need for the Sentence Imposed to Promote Certain Statutory Objectives.

### 1. *To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the offense.*

A lengthy sentence of incarceration is not always necessary in order to satisfy this sentencing mandate. Indeed, as observed by the District Judge in *Gall*, probation (or post-release supervision), "rather than an act of leniency, is a substantial restriction of freedom." *Gall*, 128 S.Ct. at 593. The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions along with a [multi]-year regime of alcohol and drug testing." *Id*. The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id*.

As renowned criminologist Norval Morris has consistently argued, and as reflected in recent Supreme Court decisions, when determining punishment, "the least restrictive

16

(punitive) sentence necessary to achieve defined social purposes should be imposed." Norval Morris, <u>The Future of Imprisonment</u>, University of Chicago Press (1974), p. 59.

Mr. Runnels concedes that he must be punished for his actions. However, this punishment should be proportional not only to the social harms caused by his conduct, but also to the social harms caused by depriving him of his liberty for any substantial period of time. Mr. Runnels will forever have a federal felony conviction on his record, a stigma that has serious consequences.

A sentence of probation, or a sentence of time served, with five years of supervised release with a special condition that the first six months be served on electronic monitoring will undoubtedly satisfy the statutory objective of providing "just punishment for the offense" to which he pleaded guilty in this case.

> 2. *To Afford Adequate Deterrence to Criminal Conduct, and To Protect the Public from Further Crimes of the Defendant.*

For similar reasons, the proposed sentence also satisfies the related statutory objectives of deterrence and protection of the public. The fact that Mr. Runnels was investigated, indicted and then plead guilty to a federal felony, is a deterrent in and of itself. The lifelong stigma of being a federal felon, along with a five year probation or supervised release acts as a deterrent to other similar individuals contemplating this type of crime.

Further, when examining the life of Tim Runnels, including the fact that unlike most defendants appearing before this Court, he has never had an arrest or conviction, and considering his compliance with the law and successful pretrial supervision, leads to the

Case 4:15-cr-00106-DW   Document 33   Filed 05/17/16   Page 17 of 23

conclusion he is not a danger to the community. The likelihood that Mr. Runnels will commit future criminal conduct is virtually nonexistent.

> 3. *To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner.*

Mr. Runnels graduated from the University of Central Missouri with a degree in criminal justice and a minor in sociology. Mr. Runnels enjoys good health following a 6-year childhood leukemia battle that entailed numerous hospitalizations and treatments utilizing both chemotherapy and radiation. Mr. Runnels is highly susceptible to skin cancers and has had four spots removed and requires follow-up every three months. Mr. Runnels suffers from no mental health disorders or substance abuse issues and does not require any treatment in this regard. In short, this sentencing factor simply does not apply to Mr. Runnels. In fact, the information provided with regard to this factor can be considered a sentencing mitigator. He is well educated and can continue to be a productive member of society.

### C. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The guidance set out in § 3553(a)(6) to prevent a disparate sentence among defendants with similar backgrounds *found guilty* of similar conduct is a difficult comparison given the lack of charged cases within this Circuit. At least some comparisons to other cases or events with similar conduct can be made. In a case arising in this District, styled as *United States v. Devens* Case No. 08-137, defendant Devens, a 17-year police officer, was sentenced to 3 years of probation. Mr. Devens was convicted of deprivation of civil rights

18

under color of law for beating an arrestee and causing bodily injury, and obstruction of justice for partially erasing his dashcam video to evade detection. The defendant received a sentence of three years of probation.

In *United States v. Burgess*, Case No. 09-101, the defendant was charged with deprivation of civil rights after he forced a juvenile female to perform a sex act. The defendant, who was 35 at the time of the offense, faced a life sentence, but was allowed to plead to a binding plea agreement to 168 months – a sentence of 14 years when facing the remainder of his life in prison.

In *United States v. Bottorff*, Case No. 15-106, the defendant, a sheriff's deputy, repeatedly maced and punched an inmate in the face, back and buttocks while housed at the Jackson County Detention Facility. Mr. Bottorff received a sentence of one year of probation.

In *United States v. Gray*, Case No. 09-00182 in the Northern District of Ohio, the defendant was the supervisor of a jail booking unit. He used a sleeper hold on an arrestee who lost consciousness for several minutes. He subsequently died. Defendant Gray obstructed justice by lying to medical personnel that the victim had never lost consciousness. He also convinced several deputies to lie about the truth as to what had transpired with the victim. After a mixed jury verdict, the government sought a sentence of 97 months and the defendant requested probation. The court sentenced the defendant to 36 months.

The Court should also take notice of several other non-prosecuted cases with similar conduct to that of Mr. Runnels. In Virginia, the State opted not to charge officers who used stun guns multiple times on a mentally ill, handcuffed arrestee. The victim succumbed following the incident, however, the medical examiner found that the primary cause of death was "cocaine-induced excited delirium." The State made the decision not to bring charges. Richmond Commonwealth's attorney, acting as a special prosecutor for Halifax County, stated in a public press conference, "You don't bring criminal charges to make policy points." The Associated Press. "Officers Who Used Stun Guns on Virginia Man Won't Be Charged." *Richmond Times-Dispatch* 3 May 2016. Web. 9 May 2016.

In other cases around the country, charging and sentencing differences are notable. A former South Carolina police officer who shot and killed an unarmed man was sentenced to probation and 80 hours of public service. A former New York City police officer convicted of manslaughter recently received a reduction in his conviction to criminally negligent homicide of an unarmed man and sentenced to five years' probation and 800 hours of community service. The Brooklyn, NY District Attorney the New York case noted in his written sentencing recommendation, "[The defendant] has no prior criminal history and poses no future threat to public safety." Sanchez, Ray. *CNN* 19 April 2016. Web. 9 May 2016.

In *United States v. Hunt*, 526 F.3d 739 (11th Cir. 2008), the defendant was convicted after jury trial under 18 U.S.C. §1519. The defendant was a police officer who had arrested a suspect. The suspect was grabbed by the arresting officer, placed in a bear hug, and

20

thrown to the ground where the suspect's head struck the concrete. He was hospitalized for eight days and suffered permanent hearing loss. Finding the defendant's behavior as aberrant, Mr. Hunt was sentenced to five months imprisonment followed by five months home confinement.

It has been reported that another deputy sheriff in Pinnellas County, Florida was sentenced to 12 months in prison and 12 months supervised release for violations of the civil rights of a suspect who was kicked and the object of a Taser after the suspect did not comply with a directive. See, United States Department of Justice Press Release, April 23, 2007, www.usdoj.gov.

Significantly, in *Kalinowski v. Kotowski*, 2014 U.S. Dist. Lexis 154015 (M.D. Pa. 2014), a court "did not agree that the officer acted unreasonably in using her Taser rather than waiting for backup to arrive while trying to defuse the situation."

Interestingly, in Fulton, New York, a former sergeant with the Fulton Police Department pled guilty to one count of violating 18 U.S.C. § 242. According to the press release issued by the Justice Department, a suspect who was handcuffed was brought to the sheriff's station. The suspect would not stop yelling. In frustration, the defendant shoved the suspect's head into the bench, punched him multiple times causing the suspect to lose consciousness and undergo a surgery requiring seven stitches. The suspect lied to his supervisors and in his reports. He was sentenced to 15 months in prison. See, Department of Justice, Office of Public Affairs, January 23, 2015.

These facts are offered solely for mitigation and in further support of the 18 U.S.C. § 3553(a) factors that should be considered for sentencing. A guideline sentence for Mr. Runnels is not proportionate, nor is it necessary, to achieve the goals of sentencing.

Based on this information, Mr. Runnels asserts that a sentence of five years of probation, or a sentence of time served, with five years of supervised release with a special condition that the first six months be served on electronic monitoring, and an order to perform community service, would avoid unwarranted sentencing disparities among defendants that appear to be similarly situated to the present case.

## VI.    CONCLUSION

Given the factual support for a downward departure pursuant to U.S.S.G. § 5K2.0, as well as all of the 18 U.S.C. § 3553(a) statutory sentencing factors discussed herein, the proposed sentence of five years of probation, or a sentence of time served, with five years of supervised release with a special condition that the first six months be served on electronic monitoring, and a condition imposing community service, would adequately reflect the seriousness of Mr. Runnels' offense; promote respect for the law; and provide just punishment. Here, the significant mitigating factors, including his prior public service, his vulnerability to abuse within the prison system, proportionality, and the fact that Mr. Runnels is highly unlikely to reoffend; all provide compelling support for the requested downward departure and/or variance.

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By:    /s/ James R. Hobbs
           James R. Hobbs          MO#29732
           1200 Main, Suite 2110
           Kansas City, Missouri 64105
           jrhobbs@whmlaw.net
           Tel:  (816) 221-0080
           Fax:  (816) 221-3280
           **ATTORNEY FOR DEFENDANT**
           **TIMOTHY RUNNELS**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 16th day of May, 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

 /s/ James R. Hobbs
***Attorney for Defendant***

23